[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13335
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 25, 2010
JOHN LEY
CLERK

Agency No. A094-041-053

JUAN BLAS MATUTE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 25, 2010)

Before EDMONDSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Juan Blas Matute, a native and citizen of Honduras, petitions pro se for

review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the Convention Against Torture ("CAT"). After review, we dismiss in part and grant in part the petition.

In his application and at his hearing, Matute claimed that he was persecuted on account of his membership in a particular social group. Specifically, Matute claimed that his brother Efrain was involved in a dispute with other soldiers while serving in the Honduran military. In 1990, the other Honduran soldiers killed Efrain. Between 1997 and 2006, these same Honduran soldiers, who had sworn to kill the rest of Efrain's family, beat Matute until he was unconscious, killed one of Matute's other brothers and attempted to kill his sister. When the Honduran soldiers attacked Matute, they told him he needed to pay for what Efrain had done and, before they shot Matute's sister, they told her they were going to kill her entire family one by one because of what Efrain had done. However, Matute does not know what Efrain did to provoke the Honduran soldiers to kill him and target his family.

The IJ found that Matute was credible, but denied all relief. The IJ denied Matute's asylum claim as time-barred. As to Matute's claim for withholding of removal, the IJ found that Matute failed to establish the motivation for the attacks

2

on Matute's family and, more particularly, what Efrain had done "to cause his fellow soldiers to kill him." The IJ concluded that "there is nothing in the record to distinguish what happened to Efrain from a personal dispute," which cannot support a valid persecution claim. The IJ also concluded that Matute had not shown that he had been or would be tortured by the Honduran government or with the Honduran government's acquiescence given that Matute had never reported any of these incidents to the police.

The BIA affirmed. The BIA concluded that Matute had waived any challenge to the denial of his asylum claim by not contesting it on appeal and had not established a clear probability that he would be tortured in Honduras. The BIA adopted the IJ's reasons for denying Matute's claim of withholding of removal.

As an initial matter, we lack jurisdiction to review Matute's asylum claim because (1) Matute failed to challenge it before the BIA, see 8 U.S.C. § 1252(d)(1), INA § 242(d)(1); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006); and (2) appellate courts are divested of jurisdiction to review agency decisions as to the timeliness of an asylum application, see 8 U.S.C. § 1158(a)(3), INA § 208(a)(3); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005). In addition, Matute has abandoned his CAT claim by omitting any argument as to this claim in his brief to this Court. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Therefore, we dismiss

Matute's petition as to his CAT and asylum claims and address only Matute's claim of withholding of removal.[1]

To qualify for withholding of removal, an alien must demonstrate that it is more likely than not that his life or freedom would be threatened on account of "race, religion, nationality, <u>membership in a particular social group</u>, or political opinion" if removed. 8 U.S.C. § 1231(b)(3)(A), INA §241(b)(3)(A) (emphasis added); <u>see</u> <u>Silva v. U.S. Att'y Gen.</u>, 448 F.3d 1229, 1243 (11th Cir. 2006). "If the applicant can show that the persecution was, at least in part, motivated by a protected ground, then the applicant can establish eligibility for withholding of removal." <u>Tan v. U.S. Att'y Gen.</u>, 446 F.3d 1369, 1375 (11th Cir. 2006).

On appeal, Matute essentially argues that no matter what the nature of the dispute between his brother Efrain and the Honduran military was, he and his siblings were harmed by Honduran soldiers because they are part of Efrain's family. Thus, the question becomes whether a family is a "particular social group."

---

[1] We review the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." <u>Al Najjar v. Ashcroft</u>, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." <u>Id.</u> Here, because the BIA adopted the IJ's reasons for denying Matute's withholding of removal claim, we review the IJ's opinion as well. We review legal conclusions <u>de novo</u> and factual determinations under the substantial evidence test. <u>Yu v. U.S. Att'y Gen.</u>, 568 F.3d 1328, 1330 (11th Cir. 2009). Under the substantial evidence test, we must affirm if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>Forgue v. U.S. Att'y Gen.</u>, 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation marks omitted).

The INA does not define what constitutes persecution on account of membership in a "particular social group." The BIA interprets this statutory phrase to mean "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic." In re Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985), overruled on other grounds by In re Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987). We defer to the BIA's legal definition. Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196-97 (11th Cir. 2006). In Acosta, the BIA explained that "[t]he shared characteristic might be an innate one such as sex, color, or kinship ties," or might be based upon shared past experience, and that whether a "particular kind of group characteristic" qualifies must be determined on a case-by-case basis. Acosta, 19 I. & N. Dec. at 233 (emphasis added).

This Court has not yet addressed whether a family constitutes a particular social group within the meaning of the INA. Pointing to the "kinship ties" language in Acosta, several other circuits have concluded that it does. See, e.g., Lopez-Soto v. Ashcroft, 383 F.3d 228, 235 (4th Cir. 2004) (involving the brother of an ex-soldier who refused to join a Guatemalan street gang); Jie Lin v. Ashcroft, 377 F.3d 1014, 1028-29 (9th Cir. 2004) (involving the son of woman who violated China's family planning policies by bearing a second child); Lwin v. INS, 144 F.3d 505, 511 (7th Cir. 1998) (involving the parents of a Burmese student

5

dissident); <u>Gebremichael v. INS</u>, 10 F.3d 28, 36 (1st Cir. 1993) (involving the brother of an Ethiopian who had escaped military detention). In addition, the BIA has concluded that membership in a clan that shares kinship ties and linguistic commonalities can constitute a particular social group. <u>In re H</u> , 21 I. & N. Dec. 337, 342-43 (BIA 1996) (involving a member of a Somali sub-clan given preferential treatment under a prior regime).

Here, the IJ concluded that Matute had not shown the required nexus between the harm he suffered and a protected ground because Matute did not present any evidence of why the Honduran soldiers killed his brother Efrain. Although the record does not reveal the reason the Honduran soldiers killed Efrain, it does establish that the Honduran soldiers targeted Efrain's family, including Matute, because of his kinship as they believed the family should pay for whatever Efrain had done. Furthermore, the IJ focused solely on the motive for Efrain's killing. The IJ did not consider whether Efrain's family constitutes a particular social group and, if so, whether Matute was singled out for mistreatment because of his membership in that particular social group. Under these circumstances, the proper disposition is to remand the case for the IJ and the BIA, in the first instance, to consider the issue of whether kinship or family ties constitute a particular social group under INA § 241(b)(3). <u>See</u> <u>Gonzalez v. Thomas</u>, 547 U.S. 183, 185-87, 126 S. Ct. 1613, 1614-15 (2006) (vacating Ninth Circuit's opinion concluding that

6

asylum petitioner was persecuted on account of her membership in a particular social group because the BIA had not yet considered whether petitioner's family relationship qualified under that ground and explaining that remand to the agency was required under the ordinary remand rule).

Accordingly, we grant Matute's petition with respect to his withholding of removal claim and remand his case to the BIA to give it and the IJ the opportunity to address in the first instance (and make adequate findings as to) Matute's claim that he was persecuted and fears persecution because he is a member of Efrain's family and thus a member of a particular social group.

**PETITION DISMISSED IN PART, GRANTED IN PART.**